EDWARD A. CAMPBELL v. FREDERICK GILKYSON, ACTING ADJUTANT-GENERAL.

Argued April 10, 1909—Decided April 14, 1909.

The supplement to the Militia act, approved March 2d, 1909 (*Pamph. L.*, *p.* 13), is a constitutional enactment that does not contravene paragraph 6, section 1, article 7 of the state constitution.

On *certiorari.*

The prosecutor, who was elected and commissioned to the office of brigadier-general of the first brigade, was relieved from his said command and placed on the retired list by an executive order made by John Franklin Fort, governor, and signed by Frederick Gilkyson, acting adjutant-general, known as General Order No. 10, which general order was pursuant to the provisions of chapter 3, laws of 1909, which reads as follows:

"A supplement to an act entitled 'An act concerning the militia of the State,' approved May sixteenth, one thousand nine hundred and six.

"Be it enacted by the Senate and General Assembly of the State of New Jersey:

"1. From and after the passage and approval of this act any commissioned officer of the National Guard or Naval Reserve of this State may, upon reaching the age of sixty-two years, be retired from active service and placed upon the retired list, upon his application to the Adjutant-General for that purpose.

"2. When any commissioned officer of the National Guard or Naval Reserve of this State shall reach the age of sixty-four years, he shall be retired from active service and placed on the retired list.

"3. All officers hereafter retired from the active service shall be retired upon the actual rank held by them at the date

of retirement unless a brevet rank shall be granted, as provided in section ninety-five of the act to which this act is a supplement.

"4. All officers retired from active service shall be withdrawn from command.

"5. This act shall take effect immediately.

"Approved March 2, 1909."

The prosecutor, conceiving this statute to be unconstitutional, sued out this writ of *certiorari* under which the reasons assigned for the annulment of General Order No. 10 are as follows:

"1. The order of March 16th, 1909, known as General Order No. 10, in so far as it seeks to relieve from command and place upon the retired list the prosecutor, is illegal and void, because neither the executive nor the defendant has the power to issue such an order.

"2. Chapter 3 of the session laws of 1909, approved March 2d, 1909, which attempts to authorize such order, is unconstitutional and void, being violative of the provisions of article 7, section 1, paragraph 6 of the constitution of the State of New Jersey, which provides that no commissioned officer shall be removed from office but by the sentence of a court-martial pursuant to law."

Upon the argument it was assumed that the prosecutor had reached the age limit fixed by the statute.

Before Justices GARRISON and SWAYZE.

For the prosecutor, *Robert H. McCarter.*

For the defendant, *Nelson B. Gaskill,* assistant attorney-general.

The opinion of the court was delivered by

GARRISON, J. The single question presented for decision is whether or not the supplement to the Militia act, approved March 2d, 1909 (*Pamph. L., p.* 13), is unconstitutional as

being within the interdict of the clause of paragraph 6, section 1, article 7 of the constitution of this state, which provides that "no commissioned officer shall be removed from office but by the sentence of a court-martial, pursuant to law."

We think that the supplement in question is not in contravention of this constitutional provision. This provision deals primarily with removal from office such as results from the sentence to that effect of a court-martial, and it protects commissioned officers from such removals otherwise than by such trial and sentence.

Now, courts-martial deal with individual cases of personal dereliction, hence the removals from office that are imposed by their sentences are of a personally punitive or disciplinary character and result not merely in relieving the officer from the performance of the duties of his office, but actually in removing him from the incumbency of the office itself. Removal from office in this sense, *i. e.*, all removals from incumbency in office, the constitution forbids otherwise than by the sentence of the judicial tribunal specially designated in the constitution itself. If, therefore, the supplement of 1909 dealt with removals from office it would be nugatory. The supplement, however, does not deal with removals from office at all. On the contrary, the legislature in this act deals with retirements from active duty as an incident of the reorganization of the military arm of the state, a matter that is, as we shall see, expressly committed to its regulation. The constitutional provision that has been quoted, and the statute that is under review, differ, therefore, fundamentally in character, purpose and effect; nothing indeed could be wider apart than the field covered by the constitution and that covered by the statute; at no point do they coincide, hence conflict between them is impossible.

That the power and the duty to reorganize the military arm of the state is committed in plenary form to the legislature is evident from paragraph 1 of article 7 of the constitution, which provides that "the legislature shall provide by law for enrolling, organizing and arming the militia." Inasmuch as organizing is but supplying with organs such duty in respect

to a continuous branch of the service is itself a continuing one that is no more exhausted by its initial exercise than is the duty of arming the militia with which it is coupled by the constitution, and no one I suppose will contend that the legislature, having once supplied the militia with arms, is thenceforward devoid of power to furnish them with other or different arms as occasion may require.

That it is within the legislative province to provide an age limit at which active military duty shall cease cannot, I think, be questioned. By what method this shall be accomplished, whether by boards of inquiry or by direct and determinate legislation, is a matter of detail that is committed by the constitution solely to the legislative branch of the government. Assuming the existence of this power a statute that fixes the age at which commissioned officers shall retire from their commands is strictly within the legislative province, and this is all that the statute now before us undertakes to do.

Our conclusion, therefore, from an examination of the constitutional provision in question and the supplement of 1909 is that the latter does not conflict with the former. The conclusion thus reached is reinforced by the long line of legislative enactments of similar character and effect that have been acquiesced in as practical constructions of this constitutional clause with something more than tacit judicial approval. From data with which we have been furnished by counsel it appears that under such reorganizing statutes thirteen commissioned officers were retired in 1872; that under a similar statute in 1877 fifty-one commissioned officers were placed on the retired list and that in 1899, by like course, ninety-five officers were relieved of active command.

This course of practical construction has peculiar significance for us from the fact that it is supported as to its most salient feature by the express declaration of this court in the case of *Grove* v. *Mott,* 17 *Vroom* 328, that "the officers placed on the retired list still hold their commissions." If this be so, and upon both reason and authority we conclude that it is, retirement from active duty is not "removal from office" with which alone the constitutional interdict is concerned.

Having reached this conclusion as to the constitutional and statutory provisions of our own jurisdiction, we have not found it necessary to extend our examination to the many cases decided elsewhere that have been cited to us through the industry of counsel. It may be stated in passing, however, that the cases of *People, ex rel. Weeks*, v. *Ewen*, 17 *How.* 375, and *People* v. *Hill*, 126 *N. Y.* 497, have a bearing upon certain phases of the question at issue that in a doubtful case would justify their extended examination. The circumstance, so much dwelt upon by counsel, that the prosecutor had been elected and commissioned "brigadier of the first brigade," whatever its force may be when addressed to the legislative discretion, has, as far as we can discover, no bearing upon the constitutional question with which alone we have to deal.

The statute of 1909 being, as we think, a constitutional enactment, Order No. 10, issued pursuant thereto, was an executive act touching a subject-matter over which this court has no jurisdiction. *Grove* v. *Mott*, 17 *Vroom* 328; *In re Powers*, 37 *Id.* 570; *Smith* v. *Wanser*, 39 *Id.* 249.

The writ must therefore be dismissed.